FRED ALSTON v. NANCY ALSTON.

(Filed 18 March, 1925.)

**Verdict—Polling Jury—Reversal of Verdict—Appeal and Error.**

> After a jury has rendered its verdict upon the evidence, without indication by any of the jurors of any dissatisfaction therewith, and have been discharged from further consideration of the case, and have mingled with those upon the outside of the panel, it is reversible error for the trial judge to ask them if they had not made a mistake in their answer to an issue, poll them, and reverse the issue in accordance with their answer to his question.

APPEAL by plaintiff from *Horton, J.*, at August Term, 1924, of FRANKLIN.

Plaintiff alleges two causes of action for divorce—one that the defendant has committed adultery (C. S., 1659), and the other that the plaintiff's life has been endangered by the cruel and barbarous treatment of the defendant (C. S., 1660).

ALSTON *v.* ALSTON.

Defendant files answer denying the allegations of the complaint, and sets up, by way of cross action, two causes for divorce: (1) that plaintiff has maliciously turned the defendant out of doors; and (2) that plaintiff has offered such indignities to the person of the defendant as to render her condition intolerable and life burdensome.

Upon the issues thus joined, and which were supported by evidence, the following verdict and record appear in the case: ·

"1. Were the plaintiff and defendant married? Answer: 'Yes.'

"2. Has plaintiff been a resident of the State for two years next prior to the bringing of this action? Answer: 'Yes.'

"3. Did the defendant, Nancy Alston, commit adultery as alleged in the complaint? Answer: 'No.'

"4. Did the defendant by cruel and barbarous treatment endanger the life of the plaintiff? Answer: 'Yes.' (Later changed to 'No.')

"5. Did the plaintiff maliciously turn the defendant out of doors as alleged in the answer? Answer: 'Yes.'

"6. Did the plaintiff offer such indignities to the person of the defendant as to render her condition intolerable and life burdensome? Answer: 'Yes.' "

"The jury, about noon, returned a verdict, answering the first and second issues, 'Yes,' the third, 'No,' the fourth issue, 'Yes,' the fifth and sixth issues, 'Yes'; and the jury was discharged. At the opening of the evening session of the court, his Honor had the jury called into the box, and asked them if they had not made a mistake in answering the fourth issue, 'Yes.' Each of the jurors stated that they ought to have answered that issue, 'No.' Plaintiff objected and excepted to the examination of each and every juror by his Honor, because after the return of the verdict and discharge of the jury, the case was ended, and calling the jury back and allowing them to reverse themselves was contrary to the practice and procedure of the court."

From a judgment against the plaintiff awarding the defendant alimony and counsel fees, and retaining the cause for further orders, plaintiff appeals.

*W. M. Person for plaintiff.*
*Wm. H. and Thos. W. Ruffin for defendant.*

STACY, C. J., after stating the case: It is the position of the plaintiff, appellant, that the court acted without authority in reassembling the jury, after its discharge, and permitting a change in the verdict which had previously been rendered. The record fails to disclose the reason for this procedure, as the evidence was amply sufficient to support the verdict. In fact, the evidence was all one way as to the alleged treatment of the plaintiff by the defendant. According to the plaintiff's

testimony, the defendant deliberately threw boiling water on him in August and inflicted such serious injuries as to confine him to his room for three or four months or until nearly Christmas thereafter. Defendant admitted throwing boiling water on plaintiff about an hour after they had had a fight in the month of August.

There was no suggestion from any member of the jury that the verdict, as rendered and accepted by the court, did not represent the actual finding of the jury, nor was it suggested that the same should be corrected to make it speak the truth or show what the jury had really done. It will be observed that after the jury was reassembled and asked if it had not made a mistake in answering the fourth issue "Yes," each of the jurors stated the issue "ought to have been answered, 'No.'" But they do not say that such was the original agreement of the jury and that the issue was answered "Yes" by mistake or inadvertence. The effect of what took place, therefore, was, not to correct an error in the verdict, as sanctioned by *Lumber Co. v. Lumber Co.,* 187 N. C., 417, but to impeach the verdict, as rendered, and to return a different verdict. This procedure was disapproved in *Mitchell v. Mitchell,* 122 N. C., 332.

It is possible that no real harm has resulted from the irregular procedure in the present case, but we cannot approve, as a precedent, the practice of recalling the jury and allowing a change to be made in the verdict, after separation and over objection, when an opportunity has intervened, as it had here, for the operation of outside and undue influences on the minds of the jurors. *Wright v. Hemphill,* 81 N. C., 33.

His Honor might have declined to accept the verdict when it was first rendered, or he could have set it aside and retired the case; but on the record, as now presented, the plaintiff must be awarded another hearing, and it is so ordered.

New trial.